IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

INTEGRITY COAL SALES, INC.,

        Plaintiff,

v.                                  CIVIL ACTION NO.  2:24-cv-00345

AVANI RESOURCES PTE, LTD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Avani Resources PTE, LTD's ("Avani") Motion to Dismiss.  (ECF No. 39.)  For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  BACKGROUND

This matter arises out of a dispute over coal.  Plaintiff Integrity Coal Sales, Inc. ("Integrity") issued purchase orders to Ben's Creek Operations WV LLC ("Ben's Creek").  (ECF No. 35-1 at 2, ¶ 13.)  Pursuant to the purchase orders, Ben's Creek would place 5,000 tons of coal onto Integrity's stockpile at Ben's Creek loadout, and Integrity would pay Ben's Creek $95 per ton.  (*Id.* at 3, ¶¶ 14–15.)  Title would not pass to Integrity until "delivery of the coal in rail cars, barges, trucks or other motor transportation."  (*Id.* at 12.)  The purchase orders also only permitted modification of the terms in writing, signed by both parties.  (*Id.*)

The first purchase order was issued on October 13, 2021.  (*Id.* at 2, ¶ 16.)  On April 8, 2022, Ben's Creek provided notice to Integrity that the first 5,000 lot mined was placed on

1

Integrity's stockpile, and Integrity paid Ben's Creek $475,000 on April 13, 2022. (*Id.* ¶¶ 18–20.)

The parties continued in this manner until approximately January 2024. (*Id.* ¶ 21.) At some point, Integrity allegedly started giving advanced payment to Ben's Creek, which totaled $4,622,648.55. (*Id.* at 4, ¶¶ 28, 30.)

In January 2024, Integrity notified Ben's Creek that it planned to move the coal it purchased from its stockpile at Ben's Creek loadout to a Panamax vessel in February 2024. (*Id.* at 4–5, ¶¶ 32, 34.) Around the same time, Integrity learned that its stockpile that previously contained 65,000 tons of coal—that Integrity had paid for—no longer contained 65,000 tons of coal. (*Id.* at 5, ¶ 37.) Ben's Creek admitted that it had reduced Integrity's stockpile by 22,000 tons without notifying or receiving consent from Integrity. (*Id.* ¶¶ 38, 39.)

Integrity asserts that Avani forced Ben's Creek to transfer 38,000 tons of coal from Integrity's stockpile to Avani's trains, (*id.* ¶ 40), despite knowing of Integrity's order and plan to transfer the coal to the Panamax vessel, (*id.* at 6, ¶ 45). Specifically, Integrity alleges that Rajesh Johar ("Mr. Johar") directed Ben's Creek to transfer the coal from the Integrity stockpile to Avani trains. (*Id.* ¶¶ 42.) Mr. Johar was a shareholder of Avani, and, because Avani owned 29.9% of Ben's Creek, Mr. Johar also participated as a non-executive director on Ben's Creek Board. (*Id.* ¶¶ 43, 44.)

On January 25, 2024, Integrity sent Ben's Creek a letter stating that this action constituted conversion. (*Id.* at 5, ¶ 41.) That same day, the parties discussed the issue and came to an oral agreement. (*See id.* at 6, ¶¶ 46–48.) As part of that agreement, Ben's Creek allegedly agreed to pay Integrity $486,600.00. (*Id.* at 7, ¶ 49.) Ben's Creek then continued to mine coal in order to satisfy the agreement. (*Id.* ¶ 50.) However, on April 14, 2024, Ben's Creek filed for bankruptcy

2

in the Southern District of West Virginia.  (*Id.* at 2, ¶ 7; *see also In re: Ben's Creek Operations WV, LLC*, 2:24-bk-20079.)

Integrity then filed the pending civil action against Avani on July 11, 2024.  (ECF No. 1.)  An Amended Complaint was later filed.  (ECF Nos. 35, 35-1, 37, 69.)  The Amended Complaint states three causes of action: (1) conversion, (2) tortious interference, and (3) unjust enrichment.  (ECF No. 35-1 at 7–10.)  These causes of action are related to Avani's alleged forceful direction to Ben's Creek to transfer coal from Integrity's stockpile to Avani's trains in or around January 2024.

Avani filed the pending Motion to Dismiss.  (ECF No. 39.)  A response, (ECF No. 45), and reply, (ECF No. 49), were filed.  As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.  Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).  A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  In applying this standard, a court must utilize a two-pronged approach.  First, it must separate the legal conclusions in the complaint from the factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the

defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

Avani moves to dismiss all claims against it for three reasons. First, it argues that Integrity is precluded from asserting the pending state law claims. (ECF No. 40 at 5–12.) Second, it argues that Integrity has failed to state a claim under each count. (*Id.* at 12–16.) Third, it argues that the case should be dismissed for failing to join Ben's Creek as a necessary and indispensable party. (*Id.* at 16–20.) Each argument is discussed in turn below.

#### A. Preclusion

Avani claims that Integrity is precluded from asserting the pending claims based on findings made by the bankruptcy court. Of relevance, Integrity filed an adversary proceeding against Avani and Ben's Creek in the Bankruptcy Court. *See Integrity Coal Sales, Inc. v. Ben's Creek Operations WV LLC et al.*, 2:24-ap-02007 (S.D. W. Va. Bankr.).[1] Therein, Integrity

---

[1] Generally, on a Rule 12(b)(6) motion, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). However, there is "a narrow exception to the principle embodied in Rule 12(d) that allows a court to consider facts and documents subject to judicial notice without converting the motion into one for summary judgment." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Under the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Here, neither the Bankruptcy Court's docket nor its accuracy can be reasonably disputed or questioned. *See also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.

4

alleged that it advanced payments to Ben's Creek as prepayment for coal to be mined and delivered, and, therefore, the stockpile of coal that remained on Ben's Creek loadout was Integrity's property—not property of the bankruptcy estate. *Id*. (ECF No. 1.) Integrity sought declaratory and injunctive relief. *Id.* However, because title never passed to Integrity based on the plain language of the purchase orders, the Bankruptcy Court determined that Integrity did not have any ownership interest in the coal because it was never placed on any mode of motor transportation, and the purchase agreements stated that title did not transfer until that occurred. *Id.* (ECF No. 33 at 4.) The Bankruptcy Court also found that Integrity did not obtain a security interest or equitable lien related to the stockpile of coal remaining on Ben's Creek loadout at the time Ben's Creek filed for bankruptcy. *Id.*

Based on these findings, Avani asserts Integrity's claims are barred by both claim preclusion and issue preclusion. Each type of preclusion is discussed below.

1. Claim Preclusion

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir.2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Three elements must be satisfied for *res judicata* to apply. "[T]here must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* at 354–55.

---

1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal citation omitted); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (explaining that a district court may "properly take judicial notice of its own records").

Beyond these "three formal elements" of *res judicata*, "two practical considerations should be taken into account." *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003). First, the court should consider whether the party or its privy knew or should have known of its claims at the time of the first action. *See id.* at 473–74. Second, the court should consider whether the court that ruled in the first suit was an effective forum to litigate the relevant claims. *See id.* at 474.

Here, claim preclusion is inapplicable because the first two formal elements are not satisfied. The second formal element of claim preclusion is not met because the claims in this civil action differ from those asserted in the adversary bankruptcy proceeding. As Integrity notes, the Adversary Proceeding related to the *ownership* of coal that sat at Ben's Creek's loadout when it declared bankruptcy, whereas this civil action relates to Avani's hand in "intentional[ly] deplet[ing] [] Integrity's stockpile prior to the bankruptcy." (ECF No. 45 at 8 (emphasis omitted).) As discussed more fully below, the pending state law claims do not rely on ownership of the coal. Thus, the Adversary Proceeding and the present civil action "pertain to different underlying losses, at different times, precipitated by different events." (*Id.*)

In turn, the first formal element of claim preclusion is not met. Although a bankruptcy court judgment is certainly a final judgment, *see, e.g.*, *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017) (internal citations omitted), the Bankruptcy Court's decision was not on the *merits* of the current causes of action.

Therefore, claim preclusion does not bar Integrity from bringing the present case.

2. Issue Preclusion

"Collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which

6

the party against whom issue preclusion is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994)). The proponent of collateral estoppel must establish the following five elements:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Id.*; *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213 (4th Cir. 2003).

In this case, Avani argues that Integrity cannot relitigate the issue of its "ownership interests in the relevant coal."[2] (ECF No. 40 at 11.) Nevertheless, Integrity avers that it can prevail on the merits of its claims without needing to show that title passed to Integrity before Avani depleted the stockpile for its own benefit. (ECF No. 45 at 10.) As discussed more fully below, Integrity is correct that ownership is not an essential element in any of the asserted causes of action. Therefore, issue preclusion does not prevent Integrity from bringing its state law claims.

Accordingly, Avani's motion to dismiss is **DENIED** insofar as it claims that preclusion bars relitigation.[3]

---

[2] Indeed, the Bankruptcy Court decided that, based on the plain language of the purchase orders, Integrity did not obtain title, a security interest, or an equitable lien on any coal stockpile until the coal was loaded into a motor transportation. That issue is identical even though the pending lawsuit revolves around a different coal stockpile because the language of the purchase orders is identical. (*See* ECF No. 35-1 at 11–28.) Therefore, principles of collateral estoppel prevent the Court from considering this issue.

[3] For the same reasons, Avani's Motion for Protective Order and Stay of Discovery, (ECF No. 41), which is also based on preclusion principles, is **DENIED**.

### B. Failure to State a Claim

At the motion to dismiss stage, Integrity has alleged sufficient facts for its claims of conversion and tortious interference with a contract. However, it has failed to state a claim for unjust enrichment. Each cause of action is discussed in turn below.

1. <u>Conversion</u>

"The tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is, in law, a conversion of the property[.]" *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of West Virginia*, 854 S.E.2d 870, 886 (W. Va. 2020) (quoting Syl. pt. 1, *Arnold v. Kelly*, 4 W. Va. 642 (1871)); *see also Worldcom v. Byne*, 68 Fed App'x 447, 454 (4th Cir. 2003) ("A plaintiff cannot bring a claim for conversion unless he has a property interest in and is entitled to immediate possession of the converted item." (citing *Economopoulos v. Kolaitis*, 259 Va. 806, 528 S.E.2d 714, 719 (Va. 2000).) "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use." *Rodgers v. Rodgers*, 399 S.E.2d 664, 668 (W. Va. 1990) (quotations and citation omitted). Of note, "bad motive or evil motive" is irrelevant and an unnecessary element of proof. *Id.* at 677. Rather, the focus is the exercise of control over the property of another without legal right to do so. *See id.; see also Pine & Cypress Mfg. Co. v. Am. Eng'g & Const. Co.*, 125 S.E. 375 (W. Va. 1924) ("And when such conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance.").

However, a plaintiff need not have ownership over property to bring a conversion claim.

Instead, "[c]ritical to any claim for conversion . . . is title or *right of possession*." *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 578 (W. Va. 2013) (internal quotations and citations omitted) (emphasis added); *Kisner v. Commercial Credit Co.*, 174 S.E. 330 (W. Va. 1934). "This right to the possession must be absolute and unconditional," and the plaintiff must have "the right to the immediate possession of the goods." *Haines v. Cochran Bros.*, 26 W.Va. 719, 723 (1885); *Thompson Dev., Inc. v. Kroger Co.*, 413 S.E.2d 137, 142 (W. Va. 1991). West Virginia caselaw does not provide a definition of "immediate" in this context, but generally "immediate" means "[o]ccurring without delay" or "instant." *Immediate*, *Black's Law Dictionary* (12th ed. 2024).

In this case, Integrity alleges that Avani converted 38,000 tons of coal from Integrity's stockpile by forcibly directing Ben's Creek to transfer said coal onto Avani's trains. There is no dispute that Integrity did not have title to the coal. (*See* ECF Nos. 40, 45, 49.) Instead, the parties quarrel whether Integrity's right of possession was *sufficiently* immediate. (*See* ECF Nos. 40 at 14; 45 at 11; 49 at 6.) Drawing all reasonable inferences in favor of the plaintiff, Integrity has stated a plausible claim at the motion to dismiss stage.

Integrity was to make two payments "20 days immediately prior to the receipt date of the NS railroad car certified weights." (*See* ECF No. 35-1 at 11.) First, a "provisional payment" was to be made once the coal was placed on Integrity's stockpile at Ben's Creek. (*See* ECF No. 35-1 at 11 (providing a "provisional price of $95.00 per US Short ton . . . in lots of 5,000 tons and placed on pad at mine" to be paid "on Friday following" based on "certified belt scale" weight). Second, the "balance of payment (Final Payment) [was] to be made 5 days after later of weights received from NS [railroad car certified weights]." (*Id.*)

Integrity claims that it paid for 65,000 tons of coal that was previously on its stockpile. (*Id.* at 5, ¶ 37.) This is supported by a January 22, 2024 email from Ben's Creek to Mr. Johar, which stated that Ben's Creek "ha[d] circa 5 trains of surveyed and paid for coal held in stock for Integrity." (ECF No. 35-2 at 2.) From that statement, it is plausible that the coal had been weighed via NS railroad car certified weight, and Integrity had made the final payment based on that weight. (*See* ECF No. 35-1 at 11.) If so, the only contractual obligation left by either party would be for Ben's Creek to deliver the coal to Integrity.

Although the purchase orders state that title does not transfer until the coal is placed on a train or other mode of transportation, they are silent as to *when* this delivery was to occur. When contracts omit key terms, courts must fill in the gaps with implied covenants, thereby effectuating the parties' intent. *Allen v. Colonial Oil Co.*, 115 S.E. 842, 844 (W. Va. 1923); *see also SWN Prod. Co. v. Kellam*, 875 S.E.2d 216, 226 (W. Va. 2022); *St. Luke's United Methodist Church v. CNG Dev. Co.*, 663 S.E.2d 639, 643 (W. Va. 2008).

According to Integrity, it had "the right to take immediate possession of coal in the pre-paid, segregated stockpile whenever [its] train arrived at Ben's Creek's loadout." (ECF No. 45 at 12.) To that extent, Ben Creek's January 22nd email stated that "Integrity ha[d] a Panamax vessel arriving in port in January (23rd) and trains scheduled in early February 6th to 16th." (ECF No. 35-2 at 2.) Because the timeline for delivery was apparently based on Integrity's trains arriving, it is plausible that delivery was to occur *whenever* Integrity's trains arrived. (*See* ECF No. 45 at 12.) Consequently, it is plausible that Integrity had the right to possess the coal anytime after the final payment had been made. Therefore, drawing all reasonable inferences in favor of the plaintiff, it is plausible that Integrity's right of possession was immediate.

Accordingly, Avani's Motion to Dismiss is **DENIED** as to Count One.

2. Tortious Inference with a Contract

In order to establish a *prima facie* claim for tortious interference, a plaintiff must show: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166, 167 (W. Va. 1983). As to the second element, it is well established that "[i]t is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract." Syl. Pt. 1, *Shrewsbery v. Nat'l Grange Mut. Ins. Co.*, 395 S.E.2d 745 (W. Va. 1990); *see also Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008) (per curiam) ("Our law is clear that, in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship.") Moreover, no cause of action for tortious interference of a contract may stand where an agent allegedly interferes with a contract of its principal. *See Cotton v. Otis Elevator Co.*, 627 F. Supp. 519, 522 (S.D. W. Va. 1986) ("A corporation cannot tortiously interfere with an agreement to which it is a party and accordingly, where an agent breaches a contract to which his principal is a party on behalf of his principal, no cause of action for tortious interference with regard to such contract can be had.").

In this case, Avani only challenges the second element.[4] (*See* ECF No. 40 at 14–16.) To

---

[4] Avani also asserts the affirmative defense of a legitimate business competition. (*See* ECF No. 40 at 15; *see also Hatfield v. Health Mgmt. Assocs. of W. Virginia*, 672 S.E.2d 395, 403 (W. Va. 2008) (explaining that "if a plaintiff makes a prima facie case, a defendant may prove [an] affirmative defense[,]" such as a "legitimate competition between plaintiff and themselves").) However, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense," except in "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)

11

that extent, the Complaint alleges that "Avani is an insider of [Ben's Creek]" because "Avani is a 29.9% owner of Ben's Creek." (ECF No. 35-1 at 2, ¶¶ 8–9.) However, the claim that Avani is an "insider," is a legal conclusion that must be set aside at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678. Further, Avani's alleged 29.9% ownership of Ben's Creek does not make it a party to the purchase orders.

Nevertheless, the Amended Complaint also alleges that "[p]ursuant to Avani's purchase of 29.9% of Ben's Creek, Mr. Johar participated as a non-executive director on Ben's Creek's Board." (ECF No. 35-1 at 6, ¶ 44.) Additionally, Integrity claims that "Ben's Creek supplied Avani with coal meant for Integrity's Panamax vessel at the behest of . . . Mr. Johar." (*Id.*, ¶ 42.) Undoubtedly, the January 22nd email exchange also shows that Mr. Johar told Ben's Creek that Avani's train arrived earlier than Integrity's and must be fulfilled. (ECF No. 35-2 at 1.) While the salutation of the email was addressed to Mr. Johar, Bharat Satija, and "the board," the email was sent to Mr. Johar at his Avani email address. (*Id.*)

So, was Mr. Johar acting as an agent of Avani or an agent of Ben's Creek? Drawing all reasonable inferences in favor of Integrity, it is plausible that Mr. Johar was acting as an agent of Avani and was, thus, a party outside of the purchase orders.

Accordingly, Avani's Motion to Dismiss is **DENIED** as to Count Two.

3. Unjust Enrichment

Unjust enrichment is "a species of quasi contract relief." *Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP*, 851 S.E.2d 817, 823 (W. Va. 2020). "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (quoting *Dunlap v. Hinkle*, 317

S.E.2d 508, 512 n.2 (W. Va. 1984)). The Supreme Court of Appeals of West Virginia ("SCAWV") has generally "indicated that if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884-85 (W. Va. 2000) (citing *Copley v. Mingo County Board of Education*, 466 S.E.2d 139 (W. Va. 1995). "To maintain a claim of unjust enrichment, the following elements must be proven: (1) a benefit conferred upon the defendant [by the plaintiff], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Barker v. Naik*, No. 2:17-CV-04387, 2018 WL 3824376, at *5 (S.D.W. Va. Aug. 10, 2018) (Johnston, C.J.) (internal quotation marks and punctuation omitted); *see also Johnson v. Ross*, 419 F. App'x 357, 361 (4th Cir. 2011) ("The threshold question is whether Plaintiffs conferred on [defendant] individually a benefit which would be inequitable for him to retain without making payment to Plaintiffs.").

In this case, Integrity's unjust enrichment claim is based on the allegations that Avani retained the benefit of the stockpile of coal, even though Integrity had purchased it. (*See* ECF No. 35-1 at 9, ¶¶ 76–77.) In the pending motion to dismiss, Avani asserts that this argument fails because it also "paid for the coal." (*See* ECF No. 40 at 16.) Conversely, Integrity argues that, while "Avani also purchased coal from Ben's Creek," the coal stockpile at issue "was pre-paid and segregated for Integrity's exclusive benefit." (ECF No. 45 at 14–15; *see also* ECF No. 35-2 ("We have circa 5 trains of surveyed and paid for coal held in stock for Integrity.").) As a result of

Avani's alleged taking of Integrity's pre-paid stockpile of coal, Integrity did not receive the coal it paid for and was stuck "bear[ing] Ben's Creek's production issues that Avani avoided." (ECF No. 45 at 15.)

This is certainly a unique theory for unjust enrichment. However, the "threshold question," is whether Integrity conferred on Avani a benefit that would be inequitable for Avani to retain without making payment to Integrity. *See Ross*, 419 F. App'x at 361. The answer to that question is simply "no."

Integrity conferred a benefit, a monetary payment, to Ben's Creek—not Avani. Conversely, Ben's Creek conferred a different benefit of coal to Avani, in exchange for a monetary payment. Thus, Integrity's payment to Ben's Creek was not even indirectly retained by Avani. Integrity cites to no West Virginia caselaw establishing that an unjust enrichment action can be sustained against a stranger to a contract who received a different benefit than that conferred by the plaintiff. The Court was unable to find any caselaw on this novel theory of unjust enrichment, either. That is unsurprising because unjust enrichment is quasi-contractual in nature, *Gulfport Energy Corp.*, 851 S.E.2d at 823, and a third-party recipient, who received a distinct benefit, would be too attenuated to any negotiations in which the buyer and seller engaged. Consequently, Integrity has not adequately plead the first element of an unjust enrichment claim.

Accordingly, Avani's Motion to Dismiss is **GRANTED** as to Count Three.

### C. *Failure to Join Ben's Creek*

Finally, Avani argues that the case should be dismissed under Rule 12(b)(7) for failing to join Ben's Creek as a necessary and indispensable party. (ECF No. 40 at 16–20.) Federal Rule of Civil Procedure 12(b)(7) permits a court to dismiss an action for "failure to join a party under

Rule 19." The Court must utilize a two-step inquiry to determine whether the non-joined person is a "required" party under Rule 19. *See* Fed. R. Civ. P. 19.

First, the Court must determine whether the "non-joined party is necessary under Rule 19(a)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020) (citing *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000)). A party is "necessary" in two situations. First, a party is necessary when "in that person's absence, the court cannot accord complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). Second, a party is necessary when (1) the non-joined person claims an interest relating to the subject of the action, and (2) is so situated that disposing of the action in the person's absence may either (i) impair or impede the non-joined person's ability to protect his or her interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. *See* Fed. R. Civ. P. 19(a)(1)(B).

If the non-joined party is determined to be necessary at step one, the Court proceeds to the second step to determine whether the party "is also indispensable under Rule 19(b)." *Id.* Importantly, if the non-joined person is "required"—*i.e.*, is determined to be both necessary under Rule 19(a) and indispensable under Rule 19(b)—but joining the required person would destroy diversity jurisdiction under 28 U.S.C. § 1332, the court must dismiss the action. *Gunvor SA*, 948 F.3d at 219 (citing *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)).

The moving party bears the burden of proof under Rule 12(b)(7). *Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001)). Mirroring the review of a 12(b)(6) motion to dismiss, the "court must accept all factual allegations in the

complaint as true and draw inferences in favor of the non-moving party." 5C *Federal Practice and Procedure*, *supra*, § 1359 (3d ed. 2018).

"Dismissal of a case is a drastic remedy, . . . which should be employed only sparingly." *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 918 (4th Cir. 1999). Indeed, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). The court's decision must be pragmatic, with an eye to the particular circumstances of the instant case, including consideration of the allegedly necessary parties not presently joined. *Id.*; *Teamsters Local Union No. 171*, 173 F.3d at 918 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 112 n.10 (1968), and *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994)).

Here, the Court need not move beyond the first step. Avani asserts two reasons as to why Ben's Creek is a necessary party under Rul 19. (*See* ECF No. 40 at 17.) Each argument fails.

First, Avani alleges that Ben's Creek has an interest under Rule 19(a)(1)(B)(i) because a Sales Contract between Ben's Creek and Avani requires Ben's Creek to indemnify it. (*Id.* at 17–18; *see also id.* at 18 (also arguing that the pending claims implicate a potential breach of Ben's Creek's representations and warranties under the Sales Contract).) Consequently, Ben's Creek has a "deep financial stake in the outcome" of the pending claims and "not being in the suit certainly precludes its ability to protect its financial interests." (*Id.* at 17–18.)

However, based on the plain language of the Sales Contract, (*see* ECF No. 7-1), Ben's Creek does not have a duty to defend Avani's actions in this suit, *see Westfield Ins. Co. v. Matulis*,

421 F. Supp. 3d 331, 339 (S.D. W. Va. 2019) (explaining the distinction between the duties to defend and indemnify). Rather, as Integrity points out, "[i]f Avani wants to sue Ben's Creek for indemnity," or for breach of representations or warranties, "that is Avani's prerogative and procedural burden to bear." (ECF No. 45 at 16.) If Avani does file suit based on the Sales Contract, Ben's Creek will have the opportunity to defend itself at that point. *See Matulis*, 421 F. Supp. 3d at 351 (noting that the "duty to indemnify cannot be determined until after the underlying suit has been resolved"). Thus, disposing of this action in Ben's Creek's absence will not impair or impede its ability to protects its financial interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, Avani reasons that Ben's Creek has an interest under Rule 19(a)(1)(B)(ii) due to "the impact that a judicial determination conflicting with the Bankruptcy Court on [Integrity]'s ownership interest would have on the administration of the bankruptcy estate." (*See* ECF No. 40 at 17–18 (lamenting that any conflicting findings would "leave Avani at risk of incurring inconsistent obligations"); *see also* ECF No. 49 (reasoning that this case "rises and falls [with] the interpretation of contracts between [Integrity] and [Ben's Creek]").) However, as discussed above, the pending claims do not rely on ownership of any coal. Further, if such an issue did arise, the Bankruptcy Court's findings foreclose this Court's ability to reconsider Integrity's ownership interest in the coal, as noted above.

Accordingly, Avani's Motion to Dismiss under Rule 12(b)(7) is **DENIED**.[5]

### IV.    CONCLUSION

For these reasons, Avani's Motion to Dismiss, (ECF No. 39), is **GRANTED IN PART** and **DENIED IN PART**. Insofar as Avani moves under Rule 12(b)(6), the motion, (ECF No.

---

[5] Avani's Motion for Summary Judgment, (ECF No. 61), which incorporated by reference its Motion to Dismiss memorandum, is also **DENIED** for the reasons stated herein.

17

39), is **GRANTED** as to Integrity's unjust enrichment claim, and Count Three is **DISMISSED**. The 12(b)(6) motion, (ECF No. 39), is **DENIED** as to Counts One and Two. Insofar as Avani moves under Rule 12(b)(7), the motion, (ECF No. 39), is **DENIED**. Further, Avani's Motion for Protective Order and Stay of Discovery, (ECF No. 41), and Motion for Summary Judgment, (ECF No. 61), are **DENIED**. The Court further **SETS** a telephonic status conference for **August 26, 2025, at 10:30 a.m**. The call-in information for the call is as follows: 304-461-4955, then dial 481 966 628#.

    **IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                      ENTER:    August 25, 2025

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE