**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

INTEGRITY COAL SALES, INC.,

        Plaintiff,

v.                                   CIVIL ACTION NO.   2:24-cv-00345

AVANI RESOURCES PTE, LTD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' Cross-Motions for Summary Judgment.   (ECF Nos. 102, 104.)   For the reasons discussed herein, these motions are **DENIED**.

### I.    *BACKGROUND*

This matter arises out of a dispute over coal.   Both Plaintiff Integrity Coal Sales, Inc. ("Integrity") and Defendant Avani Resources PTE, LTD ("Avani") issued purchase orders to Ben's Creek Operations WV LLC ("Ben's Creek") to buy coal.   (ECF No. 103 at 2–3, 6–7; ECF No. 105 at 2.)   In January 2024, Ben's Creek did not produce enough coal to fulfill both parties' orders and loaded Avani's trains with coal instead of preserving the coal for Integrity.   (ECF No. 103 at 8–11; ECF No. 105 at 8.)   Integrity is adamant that Ben's Creek did so at the behest of Mr. Rajesh Johar ("Mr. Johar"), who is both a shareholder of Avani and, because Avani owned 29.9% of Ben's Creek, a non-executive director on the Ben's Creek Board.   (*See, e.g.*, ECF No. 103 at 9.)

1

Integrity and Ben's Creek discussed the issue and came to an agreement.   (ECF No. 103 at 11; ECF No. 105 at 9.)   As part of that agreement, Ben's Creek allegedly agreed to pay Integrity damages and provide a certain amount of coal.  (ECF No. 103 at 11; ECF No. 105 at 9.) However, that agreement was left unsatisfied because, on April 14, 2024, Ben's Creek filed for bankruptcy in the Southern District of West Virginia.   (ECF No. 103 at 12; ECF No. 105 at 11; *see also In re: Ben's Creek Operations WV, LLC*, 2:24-bk-20079.)

Integrity then filed the pending civil action against Avani on July 11, 2024.   (ECF No. 1.) An Amended Complaint was later filed.   (ECF Nos. 35, 35-1, 37, 69.)   The Amended Complaint states three causes of action: (1) conversion, (2) tortious interference, and (3) unjust enrichment. (ECF No. 35-1 at 7–10.)   These causes of action are related to Avani's alleged forceful direction to Ben's Creek to transfer coal from Integrity's stockpile to Avani's trains in or around January 2024.   The Court later granted Avani's motion to dismiss for failure to state a claim as it related to count three.   (ECF No. 83 at 12–14.)   Thus, only claims for conversion and tortious interference remain.

On December 22, 2025, both parties filed their respective motions for summary judgment. (ECF Nos. 102, 104.)   Responses and replies were filed.  (ECF Nos. 107–110.)   As such, this matter is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. It states, in pertinent part, that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists

2

when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment should not be granted if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

Typically, the burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 248. "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

When faced with cross-motions for summary judgment, the Court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "Applying that standard, the facts and all reasonable inferences drawn therefrom [still] must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023). However, "[t]he court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). Consequently, a court "may not credit [the movant's contrary] evidence, weigh the

3

evidence, or resolve factual disputes in the [movant's] favor," even if "a jury could well believe the evidence forecast by the [movant]." *Aleman*, 80 F.4th at 284 (4th Cir. 2023) (alterations in original) (quoting *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 579 (4th Cir. 2017)).

### III.    DISCUSSION

In this case, genuine issues of material fact abound. The parties dispute most of the underlying facts in this case. (*See, e.g.*, ECF No. 105 at 1 (asserting, in the very first line of Avani's memorandum in support, that "Integrity's entire case rests on a mistaken factual premise"); ECF No. 107 at 1 (claiming that Avani "advances a warped interpretation of facts"); *id.* at 2 (providing Integrity's "Counterstatement of Facts")); ECF No. 108 (stating that Integrity "asks this Court to adopt a contrived understanding of facts").)

For example, they dispute the terms of Integrity's purchase agreements with Ben's Creek. (*Compare* ECF No. 103 at 2–3 (stating that, "[u]pon shipment and a final weighing of the coal, Integrity would pay Ben's Creek the balance of the *agreed-to total price* under the purchase order" (emphasis added)) *with* ECF No. 105 at 3 (claiming that "prior to shipment, Integrity did not purchase *a defined quantity of identified coal at a fixed price* but instead made payments toward future deliveries at an "indicated price" whose ultimate terms remained unsettled until Integrity determined what it could 'achieve'"); *see also, e.g.*, ECF No. 107 at 9 ("Integrity had fully pre-paid for 30,000 surveyed tons in the coal inventory stockpile"); ECF No. 108 (maintaining that the "coal was not 'fully' paid until after it was shipped").)

They dispute the nature of the stockpile of coal at Ben's Creek. (*Compare* ECF No. 103 at 7, n.3 (asserting that "Ben's Creek's vice president of operations maintains that Avani and Integrity had separate stockpiles") *with* ECF No. 105 at 3 (stating that "during the period relevant

to this dispute, no operative contract required [Ben's Creek] to maintain a separate coal pile for Integrity"); *see also, e.g.*, ECF No. 107 (Integrity had exclusive contract rights [to] the stockpiled coal."); ECF No. 108 (discussing "the unrefuted evidence of a comingled stockpile").)

They dispute the role that Mr. Johar played in Ben's Creek's decision to transfer coal to Avani instead of preserving it for Integrity. (*Compare* ECF No. 103 at 9 (claiming that "Mr. Johar . . . demand[ed] that Avani's trains be loaded . . . notwithstanding Integrity's contract") *with* ECF No. 105 at 9, n.7 (insisting Mr. Johar "lacked the ability to dictate any one deal" and "[t]he proposal to load the Avani trains ahead of the Integrity trains came from Mark Cooper, an independent director on BCG, who pushed Ben's Creek to honor the Avani deal"); *see also, e.g.*, ECF No. 107 (discussing emails sent from Mr. Johar and "[a]nother Avani representative, Bharat Satija" to Ben's Creek); ECF No. 108 at 8, n.4 ("Ben's Creek and Adam Wilson . . . made all of the relevant decisions which plausibly harmed Integrity.").)

The list goes on.

These disputes are "genuine," as each party provides conflicting evidence to support their positions. *Raleigh–Durham Airport Auth.*, 597 F.3d at 576; *see also Jacobs*, 780 F.3d at 569 (instructing that the Court cannot weigh evidence on cross-motions for summary judgment). These disputes are also "material," as they affect at least one essential element of each cause of action.[1] *Raleigh–Durham Airport Auth.*, 597 F.3d at 576. Therefore, neither party is entitled to summary judgment.

---

[1] For conversion, the terms of the purchase agreements and nature of the stockpile at Ben's Creek affects Integrity's "right of possession." *See Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 578 (W. Va. 2013) ("Critical to any claim for conversion . . . is title or *right of possession*." (internal quotations and citations omitted)). Mr. Johar's role (or lack thereof), as well as whether he was acting in his capacity as an agent of Avani or an agent of Ben's Creek, affects the second element of tortious interference, which requires "an intentional act of interference by a party outside that relationship or expectancy." *See* Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166, 167 (W. Va. 1983).

5

Accordingly, the Cross-Motions for Summary Judgment, (ECF Nos. 102, 104), are **DENIED**.

### IV.   CONCLUSION

For these reasons, the parties Cross-Motions for Summary Judgment, (ECF Nos. 102, 104), are **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       March 18, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

6